IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ACS MANUFACTURING, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00687 |
| | § | |
| ROLLS-ROYCE SOLUTIONS AMERICA INC., | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |
| *Defendant*. | § | |

**DEFENDANT ROLLS-ROYCE SOLUTIONS AMERICA INC.'S
MOTION TO QUASH SUBPOENAS ISSUED TO NON-PARTY GOOGLE LLC**

Pursuant to Federal Rule of Civil Procedure 45, Defendant Rolls-Royce Solutions America Inc. ("Defendant" or "RRSA") moves to quash the subpoenas directed to Google LLC ("Google") and respectfully states as follows:

### I.   Introduction

Plaintiff improperly attempts to force non-party Google to submit to production of voluminous documents, deposition of its corporate representative, and inspection of its commercial premises. The three subpoenas[1] served by Plaintiff are duplicative of discovery already propounded on RRSA—a party to this litigation—and not proportional to the needs of the case. Further, they are intended to harass and interfere with the business relationship between RRSA and its customer Google and places an undue burden on Google. This suit is based on a breach of contract between the parties relating to non-conforming goods tendered in 2020, and the subpoenas merely serve to increase the costs of litigation and make discovery more cumbersome. Alternatively, RRSA seeks a protective order over the subpoenas on these same grounds.

---

[1] Ex. 1, May 31, 2023 Subpoena to Produce Documents; Ex. 2, May 31, 2023 Subpoena to Testify at a Deposition; and Ex. 3, May 31, 2023 Subpoena to Permit Inspection.

## II.     Arguments & Authorities

Discovery from a third party is permitted through a subpoena issued under Rule 45 but is subject to the same general limitations set forth in Rule 26. Rule 26 requires that discovery be both "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A subpoena served on a non-party is permitted only so long as it does not constitute an undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). In analyzing whether a subpoena presents an undue burden, courts within the Fifth Circuit consider the following factors: (1) relevance of the information requested, (2) the need of the party for the documents, (3) the breadth of the document request, (4) the time period covered by the request, (5) the particularity with which the party describes the requested documents, and (6) the burden imposed. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Even if such discovery is permitted on a circumscribed basis, the Court may authorize the requesting party to show a substantial need for the testimony that cannot be otherwise met without undue hardship and ensuring that the subpoenaed party will be reasonably compensated. *Id.* 45(d)(3)(C). When the subpoena is directed to a non-party, the court may also consider the expense and inconvenience caused by the subpoenas. *Id.*

A party may also seek a protective order pursuant to Rule 26(c) to protect its own interests implicated by discovery sought from a third person. Rule 26 affords courts broad discretion in deciding whether to issue a protective order, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

> 1. The Subpoena Duces Tecum Seeks Documents that are Duplicative and/or Not Proportional to the Needs of the Case.

Plaintiff has served requests for production of documents on RRSA that closely mirror and are inclusive of those also sought from non-party Google. *Compare* Ex. 1, May 31, 2023 Subpoena

to Produce Documents to Google, *with* Ex. 4, Jan. 23, 2023 Plaintiff's First Set of Discovery Requests to RRSA *and* Ex. 5, May 30, 2023 Plaintiff's Second Set of Discovery Requests to RRSA. As demonstrated in the following table, each and every category of document sought from Google is already subsumed within a broader request previously served on RRSA.

| **Plaintiff's Selected Requests to RRSA (Exs. 4-5)** | **Plaintiff's Requests to Non-Party Google (Ex. 1)** |
| --- | --- |
| RFP No. 25: All documents and communications concerning or related to the circuit breakers, feeder cables, and bus ducting supplied by ACS for the PRY6A project from February 7, 2020 to present.<br><br>RFP No. 40: All documents and communications related to the decision to use bus ducting on the PRY6A project. | RFP No. 1: All documents and communications between [Google] and RRSA regarding the bust ducts and feeder cables ACS supplied to the Project at any time from October 1, 2018 to present.<br><br>RFP No. 2: All documents and communications between [Google] and Vanderweil Engineers regarding the bus ducts and feeder cables ACS supplied to the Project at any time from October 1, 2018 to present.<br><br>RFP No. 3: All documents and communications between [Google] and ACS regarding the bus ducts and feeder cables ACS supplied to the Project at any time from October 1, 2018 to present.<br><br>RFP No. 4: All documents and communications between [Google] and Whiting-Turner Contracting Company regarding the bus ducts and feeder cables ACS supplied to the Project at any time from October 1, 2018 to present.<br><br>RFP No. 5: All documents and communications, including but not limited to bids, quotes, and contracts, related to the bus ducts and feeder cables provided by ACS to the Project at any time from October 1, 2018 to present.<br><br>RFP No. 7: All schematics and specifications related to the bus ducts and feeder cables for the Project, including all modifications and/or proposed modifications. |

| **Plaintiff's Selected Requests to RRSA (Exs. 4-5)** | **Plaintiff's Requests to Non-Party Google (Ex. 1)** |
|---|---|
| RFP No. 18: All documents related to generator current or power rating requirements including . . . . | RFP No. 6: All schematics and specifications related to the generators provided to the Project, including all modifications and/or proposed modifications.<br><br>RFP No. 8: All schematics and specifications related to the generators for the Project, including all modifications and/or proposed modifications. |
| RFP No. 23: All notices, emails, documents and communications concerning or relating to [RRSA] providing Plaintiff notice regarding Plaintiff's alleged failure to provide noncompliance feeder cables and bus ducting. | RFP No. 9: All documents and communications [Google] ha[s] regarding any decision to terminate ACS from the Project at any time from October 1, 2018 to present. |
| RFP No. 24: All documents and communications concerning or relating to [RRSA]'s withholding "payment of certain amounts otherwise due to ACS" . . . . | RFP No. 10: All documents and communications [Google] ha[s] regarding RRSA's withholding of payment from ACS. |
| RFP No. 13: All documents (e.g., inspections, evaluations, tests, test results, bills, proof of payment, or invoice(s)) supporting [RRSA]s assertion that it "incur[red] additional costs to correct the non-conforming work, complete incomplete work and correct other defective work" asserted in paragraph 54 of [RRSA]'s Answer.<br><br>RFP No. 33: All documents and communications supporting [RRSA]'s assertion that it incurred $870,091.40 in costs "to correct defective work" as asserted in paragraph 74 of [RRSA]'s Answer. | RFP No. 11: All documents and communications [Google] ha[s] regarding any proposal to remedy the alleged compliance issues with the bus ducts and feeder cables ACS supplied to the Project at any time from October 1, 2018 to present. |
| RFP No. 3: All communications and documents exchanged between (a) Plaintiff and (b) any Person related to and/or services contracted with ACS concerning the Projects from January 1, 2018 to present, this includes, but is not limited to communications and documents exchanged between Plaintiff and Facebook, Google, or any related Project contractors and sub-contractors.<br><br>RFP No. 5: All documents and communications exchanged between (a) | RFP No. 12: All documents located on the Google My Drive shared with RRSA for the Project at any time from October 1, 2018 to present. |

| Plaintiff's Selected Requests to RRSA (Exs. 4-5) | Plaintiff's Requests to Non-Party Google (Ex. 1) |
|---|---|
| Plaintiff and (b) any Person, other than its attorney, related to the claims in this lawsuit, the lawsuit itself, and the recovery related thereto, this includes, but is not limited to communications and documents exchanged between Plaintiff and Facebook, Google, or any related Project contractors and sub-contractors. | |
| RFP No. 42: All documents relating to any invoices, payment applications, requests for payment or other billings between [RRSA] and Faith Technologies for any work done to replace Plaintiff's alleged defective work on the PRY6A project. | RFP No. 14: All documents and communications between [Google] and Faith Technologies regarding the replacement of the bus ducts and feeder cables supplied by ACS to the Project. |
| RFP No. 43: All documents relating to any invoices, payment applications, requests for payment or other billings between [RRSA] and Robinson Custom Enclosures for any work done to replace Plaintiff's alleged defective work on the PRY6A project. | RFP No. 13: All documents and communications between [Google] and Robinson Custom Enclosures regarding the replacement of the bus ducts and feeder cables supplied by ACS to the Project at any time from October 1, 2018 to present. |
| RFP No. 44: All documents relating to any invoices, payment applications, requests for payment or other billings between [RRSA] and any other subcontractor for any work done to replace Plaintiff's alleged defective work on the PRYA project. | RFP No. 15: All invoices, receipts, and other documents related to Robinson Custom Enclosures and Faith Technologies work to replace or modify the bus ducts and feeder cables supplied by ACS for the Project.<br><br>RFP No. 16: All invoices, receipts, and other documents related to any remediation measures to correct ACS's alleged defect work on the Project. |

Plaintiff could obtain directly from RRSA, and in nearly every instance already has requested from RRSA, those categories of documents sought from non-party Google. "Rule 45 subpoenas that require non-parties to search, review, and produce documents that can be obtained through discovery between parties impose an undue burden." *Steward v. Smith*, No. SA-10-CA-1025, 2018 WL 11361916, at *1 (W.D. Tex. July 18, 2018) (quashing subpoena duces tecum on non-party). As indicated in the foregoing table, Plaintiff's requested documents from Google are sweepingly broad in scope, seeking information across a whole host of issues and topics. Requiring

Google to comply would be highly burdensome (in both time and labor), costly, and would likely duplicate documents already produced by RRSA.

Even if the Court believes any portion of Plaintiff's subpoena for production of documents directed to non-party Google is neither duplicative nor otherwise discoverable from RRSA, the Court should nevertheless quash it because it has only marginal relevance and is not proportional to the needs of this case. This suit involves a fairly narrow issue—whether the goods Plaintiff tendered several years ago to RRSA pursuant to a contract were conforming. Indeed, the parties' jointly submitted 26(f) conference report agreed that whether Plaintiff's goods were conforming and whether that constituted a breach is the central focus of this lawsuit. *See* Doc. No. 11, at 1-4 ("the Parties believe this case will rely heavily on expert testimony"). The deadlines by which the parties had to disclose expert testimony on issues on which each bore the burden of proof expired before Plaintiff even served the discovery at issue (on either RRSA or Google). *See* Doc. No. 32, at 2; *see also* Doc. No. 39, at 1 (Plaintiff's May 19, 2023 notice of service of its rebuttal expert disclosures). Given the marginal need and limited relevance of the discovery sought on Google and the claims asserted by the parties, the Court should quash the subpoena for production of documents as not proportional to the needs of this case. *See Orion Marine Constr., Inc. v. Coyle*, No. H-17-522, 2018 WL 2335344, at *1 (S.D. Tex. Mar. 8, 2018) (granting motion to quash subpoena served on non-party because documents sought by Plaintiff had only "marginal relevance, and are not proportional to the needs of the case").

  2. *The Subpoena to Testify at a Deposition Seeks Testimony that is Highly Burdensome.*

Plaintiff's subpoena to depose a corporate representative of Google would be highly burdensome and would unnecessarily increase the costs of litigation in this matter. *See* Ex. 2. As an initial matter, Plaintiff has yet to conduct a single deposition of RRSA in this matter. As a result,

much of the testimony Plaintiff would likely elicit from Google would be testimony surrounding background, basic issues, and other standard fare for which Plaintiff should be first required to obtain the evidence from RRSA itself. *See Bagwell v. Rival Consumer Sales Corp.*, No. EP-06-CA-117, 2006 WL 2883137, at *3 (W.D. Tex. Sept. 19, 2006) (quashing notice of deposition and accompanying subpoena duces tecum on non-party because plaintiff failed to show that the information sought "is only obtainable through [the non-party] rather than Defendants' designated corporate representative"). Plaintiff has not indicated that any of the testimony it seeks from Google is not discoverable from RRSA via depositions or otherwise. Rather, at least some testimony Plaintiff seeks to elicit from Google's corporate representative could more easily be obtained from RRSA directly. For example, one of the topics Plaintiff seeks to depose Google is "RRSA's withholding of payment to ACS for work performed." Ex. 2, at 8 (Topic No. 8). This topic is uniquely within RRSA's purview of knowledge and courts frequently find subpoenas on non-parties unduly burdensome when the information sought may be obtained from a party through discovery. *See Bagwell*, 2006 WL 2883137, at *3.

Requiring non-party Google to prepare and make a corporate representative available would be costly, time intensive, and require Google's participation in this lawsuit in which it would otherwise have no interest or involvement. Moreso because Plaintiff has listed 13 deposition topics on myriad issues, none of which have any temporal limitation, *see* Ex. 2, at 8-9, making them far more expansive, generalized, and burdensome than even those served on RRSA's own corporate representative. *See Bavely v. Panini Am., Inc.*, No. 4:22-cv-093, 2023 WL 3686806, at *8 (E.D. Tex. Jan. 27, 2023) (subpoena was facially overbroad and thus unduly burdensome where the plaintiff "made no attempt to restrict the Requests to certain time periods").

*3. The Subpoena Seeking Inspection of a Non-Party's Workplace is of Cumulative, Dubious Value.*

Plaintiff seeks to conduct a physical inspection of non-party Google's workplace in Pryor, Oklahoma. *See* Ex. 3. This is a secured facility where access is limited, so an inspection would cause an undue burden to Google. Plaintiff's purported reason for seeking this inspection is to ascertain whether non-party Google currently uses Plaintiff's non-compliant goods. As an initial matter, this question is of limited relevance or need in this case because RRSA has alleged substantial remedial actions taken since Plaintiff delivered the goods in question several years ago. Accordingly, even if RRSA were able to remediate Plaintiff's goods' defects, it would not address the costs and measures RRSA had to take to render those goods functional.

Next, the information sought is easily discoverable through less burdensome written discovery. Indeed, Plaintiff has already propounded discovery requests on RRSA relevant to this issue. Specifically, Plaintiff previously served requests for production on RRSA, seeking among other things "[a]ll documents . . . relating to or supporting [RRSA's] assertion that it replaced Plaintiff's allegedly nonconforming goods with 'materials that conformed with the National Electric Code and the Specifications.'" Ex. 4, at 10 (Request No. 19).

There is limited value in seeing and/or inspecting Google's workplace several years since the goods were tendered. Plaintiff's current ability to inspect RRSA's client's facility to peruse bus ducts, feeder cables, and generators has little to no bearing on any claim or defense in this matter relating to Plaintiff's non-conforming products tendered years ago.

Finally, what, if anything, non-party Google has done with the non-conforming goods is not relevant to a claim or cause of action at issue in this lawsuit, where Plaintiff and RRSA have alleged competing breach of contract claims. *See Booth v. City of Dallas*, 312 F.R.D. 427, 430-33 (N.D. Tex. 2015); *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir.

2011) ("Rule 26(b) 'has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.'").

### 4. Alternatively, Good Cause Justifies Issuance of a Protective Order.

Permitting Plaintiff's subpoenas to proceed would cause both RRSA and Google to suffer annoyance, embarrassment, and undue burden. The basis of this lawsuit is a contract entered into between Plaintiff and RRSA. Non-party Google is RRSA's client. Plaintiff's subpoenas serve only to annoy Google and thus create embarrassment for RRSA to the detriment of its business relationship with Google. This negative impact on RRSA's relationship with its client Google militates in favor of a protective order being issued. Requiring Google to comply with the subpoenas at issue would expose Google to undue burden and expense for reasons that are not necessary or proportional to the limited scope of this litigation. As explained in this motion, the importance of the discovery sought is low, given that Plaintiff can either obtain the information sought from Google directly from RRSA or does not reasonably need it to prosecute or defend claims in this litigation. The minimal benefit, if any, that would result from the subpoenas is substantially outweighed by the burden and expense of compliance with them. Accordingly, good cause exists for issuance of a protective order to safeguard RRSA's own interests from Plaintiff's subpoenas directed at Google and forbidding the discovery sought by Plaintiff on Google. *See* Fed. R. Civ. P. 26(c)(1)(A).

## III.  Prayer

RRSA respectfully requests that the Court enter an order quashing the subpoenas directed to Google, LLC and granting any further relief to which RRSA may be justly entitled.

[*signature page follows*]

Dated:  June 14, 2023	Respectfully submitted,

/s/ Brandon A. Fuqua
Brandon A. Fuqua
Texas Bar No. 24078522
brandon.fuqua@us.dlapiper.com
**DLA Piper LLP (US)**
1900 North Pearl Street
Suite 2200
Dallas, Texas 75201
Telephone:  (214) 743-4581
Facsimile:  (214) 665-5986

Anthony L. Meagher (admitted *pro hac vice*)
anthony.meagher@dlapiper.com
Emily M. Steiner (admitted *pro hac vice*)
emily.m.steiner@dlapiper.com
6225 Smith Avenue
Baltimore, MD 21209
Telephone: (410) 580-3000
Facsimile: (410) 580-3001

*Counsel for Defendant and Counter-Plaintiff Rolls-Royce Solutions America Inc.*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that RRSA's counsel conferred with ACS's counsel via telephone on June 12, 2023, and that ACS opposes the relief sought herein.

/s/ Brandon A. Fuqua
Brandon A. Fuqua

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(c), I hereby certify that on June 14, 2023, a true and correct copy of the foregoing document was served on all attorneys of record via the Court's electronic filing system.

/s/ Brandon A. Fuqua
Brandon A. Fuqua