# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ACS MANUFACTURING, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 4:22-cv-00687-ALM |
| | § | |
| ROLLS-ROYCE SOLUTIONS | § | JURY DEMANDED |
| AMERICA INC., | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO QUASH SUBPOENAS ISSUED TO NON-PARTY GOOGLE LLC

Plaintiff ACS Manufacturing, Inc. ("Plaintiff" or "ACS") submits its Response to Defendant Rolls-Royce Solutions America Inc.'s ("Defendant" or "RRSA") Motion to Quash Subpoenas Issued to Non-Party Google LLC ("Motion to Quash") [Dkt. 40], and shows as follows:

## I.      INTRODUCTION

Defendant moves to quash Plaintiff's three subpoenas to Google, LLC ("Google") served on June 2, 2023: (i) a subpoena duces tecum (ii) a subpoena for testimony and (iii) a request for inspection.  Defendant's Motion should be denied in its entirety.  Initially, under Fed. R. Civ. P. 45(d)(3), this Court does not have jurisdiction to entertain Defendant's Motion with respect to the subpoena duces tecum and request for inspection of premises since the Motion was not brought in "the court for the district where compliance is required".  *See* Fed. R. Civ. P. 45(d)(3)(A).

Even if the Court did have jurisdiction, which it does not, Plaintiff's subpoenas are indisputably relevant to the claims and defenses in this case.  Moreover, Defendant has not shown, and provides the Court no evidence, that either it or Google would be unduly burdened by the subpoenas.  In fact, *Google* and Plaintiff's counsel are in active discussion to narrow the scope and reduce the burden of compliance with the subpoena.  In contrast, Defendant moves to quash the *entirety of the subpoenas* without a shred of evidence that Google would be unduly burdened.  Because the subpoenas each request relevant information, are narrowly tailored, and Defendant cannot show that the subpoenas "subjects a person to undue burden", the Motion should be denied.

## II.      BACKGROUND

This case involves Plaintiff's engagement by Defendant to provide goods and services for the construction of a Google data center in Pryor, Oklahoma.  This project was code-named PRY6A (the "Project").  Plaintiff provided and installed, among other things, enclosures, bus ducts and feeder cables connecting power generator enclosures to generators themselves.  These materials were constructed and tested in Denison, Texas and installed in Google's facility in

Oklahoma.  Several months after the installation, Defendant refused to pay Plaintiff for work performed on PRY6A, as well as other, completely different, projects in direct violation of their contracts, while expecting Plaintiff to continue to perform its obligations under the contract.  *See* Dkt. No. 20 (Plaintiff's Amended Complaint) at ¶¶ 9-23.

In defense, Defendant alleges that Plaintiff breached their contract by providing faulty and non-compliant goods, *i.e.*, feeder cabling and bus ducting (the Materials).  Defendant argues that it withheld payments to Plaintiff to offset its own damages.  *See* Dkt. No. 24 (Defendant's Answer and Counterclaims) at ¶ 90.  Defendant also alleges that, in correcting the alleged non-conforming goods, it incurred more than $1 Million in expenses beyond those allegedly offset by the payments it withheld from Plaintiff. *Id*. at ¶ 88.  As part of these expenses, Defendant alleges that it "removed the feeder cables and bus duct supplied by [Plaintiff] from the Project site and replaced them with materials that conformed with the National Electric Code and the [Project] Specifications." *Id.* at ¶ 87.

Google engineers and personnel were intimately involved in the Project at every stage.  Google directly communicated instructions to Plaintiff, Google directly gave instructions to the original manufacturer of some of the Materials, and Google inspected the materials after they were installed (although the frequency of Google's inspections is unclear).  Through discovery, Plaintiff has also learned facts confirming that *after* Plaintiff and Defendant had entered into their contract, Google modified its relevant specifications.  Plaintiff discovered that it was Google who first raised the alleged issues of non-compliance—despite Google and Defendant's express approval of the Materials for installation.

Plaintiff has also discovered that Defendant and Google, after rejecting Plaintiff's remediation plan, enacted a substantially similar remediation plan with another third-party

subcontractor which Defendant expects Plaintiff to pay for. All of the evidence relating to the result of these remediation efforts is in Google's possession and at Google's facility in Pryor, Oklahoma. Plaintiff's requests are relevant to its ability to support its claims, defend against Defendant's breach of contract counterclaim, and properly evaluate Defendant's damages claims.

Finally, at the time of these events, project documents and official communications were maintained on a virtual "Google Drive". Credentials to this drive were revoked after Plaintiff's termination. If it still exists, Google would certainly maintain access to its own drive. To date, it does not appear that Defendant has produced documents from this drive.

## III.   ARGUMENTS & AUTHORITIES

Defendant alleges that Plaintiff's third-party subpoenas to Google constitute an undue burden under Fed. R. Civ. P. 45(d)(3)(A)(iv). Defendant bears the burden to make this showing. *INTL FCStone Fin., Inc.*, 6:21-MC-0004, 2021 WL 1540528, at *1 (E.D. Tex. Apr. 20, 2021). To determine whether a subpoena imposes an undue burden, courts consider the: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature of the importance of the litigation." *Id.* (internal quotation omitted). However, even if a court finds that a subpoena presents an undue burden or is overbroad, the court should allow the party to modify subpoena requests rather than quash it. *Id.*

### 1.   The Court Lacks Jurisdiction to Quash Plaintiff's Subpoenas

Rule 45(d)(3)(A) unambiguously provides that motions to quash a subpoena must be "brought in the court for the district where compliance is required". Plaintiff's subpoena duces

tecum required Google to produce documents at 805 W. 10th Street, Suite 200 Austin, Texas in the Western District of Texas. Dkt. No. 40-1 at Page 1.  Plaintiff's request for inspection of premises was performable at Google's data center, located at 3499 Main Street Pryor, Oklahoma in the Northern District of Oklahoma.  Dkt. No. 40-3 at Page 1.  Accordingly, "because this Court is the issuing court and not the court in the district where compliance is required, this Court is not empowered" to quash these subpoenas.  *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047, 2015 WL 11117083, at *2 (E.D. Tex. Mar. 27, 2015); *First Korean Baptist Church of Dallas v. Amtrust N. Am.*, No. 4:20-CV-423, 2021 WL 2339198, at *3 (E.D. Tex. June 8, 2021). Similarly, this Court may not unilaterally transfer jurisdiction for this Motion from the district of compliance to this District under Rule 45(f), because the Motion must always be filed first in the compliance district.  *See Trover*, 2015 WL 11117089 at *2.  Furthermore, Defendant has not requested transfer.  Likewise, this District may not rule on Defendant's request for a protective order because it "rests on whether the Court reaches the merits of the Motion to Quash." *See First Korean*, 2021 WL 2339198, at *4.  For these reasons alone, Defendant's Motion should be denied with respect to Plaintiff's subpoena duces tecum and request for inspection.

### 2.    Inspection of Google's Facility is Relevant and Necessary

Defendant's opposition of Plaintiff's request to inspect Google's Project site is indicative of the groundlessness of its Motion as a whole.  Initially, Defendant argues that the site "is a secure facility where access is limited, so an inspection would cause undue burden to Google."  Motion at p. 8.  Defendant fails to offer any explanation as to how inspection is unduly burdensome.  First, both Parties have previously been cleared to enter the site.  Second, a general Protective Order has already been issued in this case and was provided to Google.  *See* Dkt. No. 40-1 at p. 24. Defendant's argument of undue burden is baseless.

Defendant next argues that inspecting the Project site "is of limited relevance or need"

because "RRSA has alleged substantial remedial actions taken since Plaintiff delivered the goods in question several years ago."  Motion at p. 40.  This argument makes little sense.  Defendant does not deny that Google is still using at least some of Plaintiff's Materials.  Second, this assertion suggests that Defendant has performed more "remedial" actions than necessary to correct the alleged deficiencies in Plaintiff's Materials.  In either case, inspecting the Project site would reveal critical information pertinent to Defendant's claims and defenses.

Defendant also argues that information gleaned from an inspection "is easily discoverable" through written discovery.  Again, this argument is unsupported.  Without the inspection, Plaintiff cannot confirm what, in fact, was ultimately installed at the Project site, whether this aligns with Defendant's damages claims, whether Google again changed its specifications, or whether Defendant is charging Plaintiff for unrelated materials.  Indeed, Defendant has not produced *any photographs* of the Project site taken after Plaintiff was terminated. In short, quashing the request for inspection would withhold important evidence from Plaintiff that is not available through party discovery, and Defendant has not offered any evidence that the requested inspection would be unduly burdensome for anyone.  Defendant's Motion to quash the inspection should be denied.

**3.    Plaintiff Seeks Relevant Documents in Google's Sole Possession.**

Defendant moves to quash the entirety of Plaintiff's subpoena duces tecum arguing that Google does not possess a single relevant document that is not obtainable through party discovery. Defendant erroneously claims that "each and every category of document" sought is duplicative of a request Plaintiff's previously made to Defendant or could be acquired directly from Defendant. *See* Motion at pp. 3, 5. This is plainly incorrect because, on their face, the vast majority of the document requests are for information in Google's sole possession. Indeed, request Nos. 2, 4, 9, 10, 11, 13, 14, 15, and 16 all ask for documents pertaining to Google's internal communications and those with other third parties related to Plaintiff's work on the Project. Dkt. No. 40-1 at 8.

None of the requests are overly broad or overburdensome. All of the requests are limited to Plaintiff's work on the Project or remediation efforts taken after Plaintiff was terminated.  In fact, to further ease Google's search, Plaintiff provided a list of persons involved with the Project along with their email addresses. *See* Dkt. 40-1 at pp. 39-41 (Exhibit A-3 to Plaintiff's subpoena).  This list includes seven non-party individuals spanning five non-party companies.

For example, the requests ask for information between Google and third-parties Vanderweil Engineers, Whiting-Turner Contracting, Faith Technologies, and Robinson Custom Enclosures. *Id.* at Requests 2, 13-15.  Vanderweil Engineers was Google's engineer of record on the Project with decision-making power with respect to compliance issues. Similarly, Whiting Turner was the Project manager. Both companies worked directly with Google on the Project and to secure other subcontractors that allegedly replaced Plaintiff's work. The information requested for these two third parties is relevant, among other things, to Plaintiff's defenses because of the significant factual disagreement as to whether Plaintiff's work complied with relevant engineering codes and the alleged defects were remediated substantially differently than proposed by Plaintiff, or the "remediation" efforts exceeded Google's allegations of non-compliance.  Google likely commented to these third-parties, and others, on this subject.

Likewise, Faith Technologies and Robinson Custom Enclosures were third party subcontractors hired to allegedly remediate Plaintiff's alleged defective work.  This information goes directly to Defendant's damages claims. Unless Defendant asserts that it was copied on, or received a copy of, each piece of communication and each document between Google and these parties, then it is likely Google has unique possession of that information.

Requests Nos. 5, 6, 7, 8, and 12 relate to contracts, schematics, specifications, bids, and quotes relevant to ACS's work on the Project. *Id.* at Requests 2, 13-15.  Considering there were

several modifications for each of these Project documents between Plaintiff and Defendant, it is likely that there are internal documents and communications in Google's possession that show the origination of these modifications. Again, this information pertains to the Materials and their alleged non-compliance.

None of this information is of "marginal relevance" on a "fairly narrow issue" as Defendant argues. *See* Motion, p. 6. Rather, the information bears directly on Plaintiff's claims, defenses, and Defendant's alleged damages. There are questions of whether Defendant, and even Google itself, internally approved of Plaintiff's work considering both were present at the full day testing of the generators at Plaintiff's facility, and both approved the products after that testing.  Additionally, the Parties dispute whether Plaintiff's initial work complied with relevant code provisions, which provisions are relevant, and whether Plaintiff's proposed modifications were reasonable per industry norm. Google is the party that initially alleged noncompliance with code provisions. Google is also the party that rejected Plaintiff's proposed remediation efforts and Google is the party that agreed to use other third-party subcontractors to remediate Plaintiff's work. All of this is highly relevant to this case. Defendant's Motion should be denied.

### 4.    Plaintiff Seeks Relevant Testimony Within Google's Sole Possession.

Defendant argues that deposing Google's representative would pose an undue burden. Again, it does not explain how.  Initially, the subpoena for testimony specifies that the deposition "may be taken remotely".  Dkt. No. 4-2 at p. 1.  Thus, no witness or counsel would necessarily have to travel to attend the deposition.  This minimizes the temporal and physical burden.

Defendant complains that Plaintiff sought its deposition of Google before it conducted any party deposition. This argument is irrelevant and not factual. There is no rule, and Defendant cites none, that Plaintiff must take third-party depositions only after party depositions.  Nevertheless, Plaintiff *did* notice Defendant's deposition prior to Google's.   On June 8, Plaintiff noticed

Defendant's deposition for June 23, 2023, while Google was set to appear on June 28, 2023. Moreover, the Parties have since agreed to reschedule *all depositions* pending a "substantial" supplemental document production from Defendant. This argument has no merit.

Defendant relies on *Bagwell v. Rival Consumer Sales Corp*., to support its contention that information within its "purview of knowledge" would be unduly burdensome to seek from Google. *See* Motion to Quash, p. 7. However, *Bagwell* is highly distinguishable. In *Bagwell*, plaintiff sought third-party discovery from a defendant's former employee about defendant's own business structure. EP-06-CA-117, 2006 WL 2883137, at *1 (W.D. Tex. Sept. 19, 2006). The subject subpoena was quashed because this subject was obviously within Defendant's purview. *Id*. Here, Plaintiff seeks information from Defendant's customer and ultimate owner of the Project and relevant Materials. Google had no duty or obligation to share all relevant information to either Party, and Defendant cannot, and has not, certified that it did.  While Defendant claims that some of the information requested could be elicited from Defendant directly, *see* Motion at p. 7, it is likely that Google privately discussed ACS and the Materials. For example, Google may have initially approved of Plaintiff's Materials, or internally recognized an error in its specifications or communications with contractors.  Without the requested discovery, neither Party can know.

Finally, Defendant asserts that the subpoena is overbroad because there are no temporal limitations on the deposition topics. *See* Motion to Quash, p. 7. However, the subpoena identifies the "Project", ACS, and included a copy of Plaintiff's Amended Complaint, which specifically discusses the relevant timeframe. *See* Dkt. No. 41-1 at pp. 10-23.  The Project is readily identifiable and relevant information pertaining to Plaintiff is also within an identifiable time frame. The subpoena is tailored to the relevant issues and timeframe and is not overbroad or burdensome.

## 5.    Defendant Failed to Show Good Cause to Justify a Protective Order.

As discussed above, Plaintiff's request for a protective order is outside of this Court's

jurisdiction. *See First Korean Baptist Church of Dallas*, 2021 WL 2339198, at *4.  Nevertheless, to obtain the requested protective order the burden is on Defendant to present specific facts that "establish the necessity of a protective order upon a showing of 'good cause'. . . ."  *Caraway v. Chesapeake Exploration LLC*, 269 F.R.D. 627, 628 (E.D. Tex. 2010) (quoting *Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp.*, 147 F.R.D. 125, 127 (N.D. Tex. 1992).  Furthermore, Defendant "must establish good cause with a specific demonstration of fact rather than mere conclusory allegations." *Id.* (internal quotation marks omitted). Defendant may not rely on conclusory allegations which simply assert the discovery is unduly burdensome or unnecessarily harassing.  *See Ferko v. Nat. Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003); *see also* Fed. R. Civ. P. 26(c)(1).

Here, Defendant has provided nothing more than conclusory allegations to support its alternative request for a protective order. Defendant claims that requiring Google to comply with the subpoenas would be annoying, embarrassing, and unduly burdensome. However, Defendant has not described any specific facts that demonstrate good cause necessitating a protective order.. Rather, Defendant claims only that the information sought by Plaintiff can be obtained directly from Defendant or that the information sought is of minimal benefit. However, as described throughout this response, the information sought is in Google's sole possession and pertains directly to Plaintiff's claims, defenses, and Defendant's alleged damages. Defendant has not presented any evidence of good cause.

IV.    **CONCLUSION & PRAYER**

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Quash and for any further relief to which Plaintiff may be justly entitled.

Dated: June 28, 2023          Respectfully submitted,

**PLATT CHEEMA RICHMOND PLLC**

*/s/ Matthew C. Acosta*
Matthew C. Acosta
Texas Bar No. 24062577
macosta@pcrfirm.com
Nicholas C. Kliewer
Texas Bar No. 24083315
nkliewer@pcrfirm.com
Alen A. Samuel
Texas Bar No. 24108245
asamuel@pcrfirm.com
1201 N. Riverfront Blvd., Suite 150
Dallas, Texas 75207
214.559.2700 Main
214.559.4390 Fax

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff does hereby certify that the foregoing document was served upon all parties and counsel of record on June 28, 2023 via the Court's electronic filing system.

*/s/ Matthew C. Acosta*
Matthew C. Acosta